UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENDA A. PATTERSON,

    *Plaintiff*,

    v.

FLORIDA DEPARTMENT OF CHILDREN
AND FAMILIES, *et al.*,

    *Defendants.*

Civil Action No. 21-1427 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Brenda A. Patterson, proceeding *pro se*, filed this action on May 26, 2021, against two Florida counties, a Florida state agency, the Clerk of the United States Supreme Court, and two private corporations. Dkt. 1. Although the relationship between these various parties is not obvious, Plaintiff's claims arise from the arrest and incarceration of Plaintiff's son, Dimitri Patterson; allegations of forced medication during Dimitri's time at a psychiatric facility; and subsequent efforts by Plaintiff and her son to vindicate what she describes as the violation of their rights. Dkt. 3 (Am. Compl.). Plaintiff seeks a judgment of $300 million in actual damages; $60 million in "presumed damages"; and $60 million or 10% of Defendants' net worth (whichever is greater) in punitive damages. *Id.* at 43 (Am. Compl.). This is not the first such suit. Either Plaintiff or her son has filed similar actions in at least two other federal district courts, both of which have dismissed their claims. *See Patterson v. Orlando-Orange County*, No. 6:18-cv-950, 2018 WL 6249790 (M.D. Fla. Nov. 29, 2018); Omnibus Order, *Patterson v. Orange County*, No. 1:19-cv-21960 (S.D. Fla. May 18, 2020) (Dkt. 111).

Now before the Court are motions to dismiss by Miami-Dade County, Dkt. 10; Hilton Worldwide Holdings, Inc. ("Hilton"), Dkt. 20; Wellpath Recovery Solutions, LLC. ("Wellpath"), Dkt. 31; and the Clerk of the Supreme Court, Scott S. Harris ("the Clerk"), Dkt. 40.[1]  Also before the Court are Plaintiff's motions for entry of default against Orange County, Dkt. 13; Wellpath, Dkt. 23; and Hilton, Dkt. 27; and Plaintiff's motion for default judgment against the Clerk, Dkt. 36.  For the reasons that follow, the Court will **GRANT** Defendants' motions to dismiss and will **DENY** Plaintiff's motions for entry of default and her motion for default judgment.

## I.

Miami-Dade County, Hilton, and Wellpath each move to dismiss this action for lack of personal jurisdiction.  Personal jurisdiction is, of course, a prerequisite to suit; except under rare circumstances not present here, "a federal court . . . may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422. 430–31 (2007).  On a motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant[s]."  *Crane v. N.Y. Zoological Soc'y.*, 894 F.2d 454, 456 (D.C. Cir. 1990).  A plaintiff may establish personal jurisdiction by asserting either general jurisdiction—which "extends to any and all claims brought against a defendant"—or specific jurisdiction—which requires that "[t]he plaintiff's claims . . . arise out of or relate to the

---

[1] The Court issued *Fox-Neal* orders advising Plaintiff of the need to oppose dispositive motions. *See* Dkt. 11 (*Fox-Neal* order for Miami-Dade County's motion to dismiss); Dkt. 21 (same for Hilton); Dkt. 32 (same for Wellpath).  Although no separate order issued with respect to the Clerk of the Supreme Court's motion to dismiss, Plaintiff has received ample notice of the need to respond and, in fact, has filed oppositions to all four pending motions to dismiss, *see* Dkt. 14 (opposition to Miami-Dade County's motion to dismiss); Dkt. 28 (same for Hilton); Dkt. 34 (same for Wellpath); Dkt. 43 (same for the Clerk)*.*  In any event, Plaintiff's claims against the Clerk fail for lack of subject-matter jurisdiction and are frivolous on their face, meaning they would have been subject to *sua sponte* dismissal..

defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (quotation marks omitted). Plaintiff has not carried that burden here with respect to either form of personal jurisdiction, even accounting for the liberal pleading standard afforded *pro se* litigants, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

As for general jurisdiction, Plaintiff makes no allegation that any of the three Defendants who have moved to dismiss for lack of personal jurisdiction should be "fairly regarded as at home" in the District of Columbia, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Miami-Dade County, Hilton, and Wellpath, moreover, each expressly deny that notion, *see* Dkt. 10-1 at 12; Dkt. 20-1 at 4; Dkt. 31-1 at 4, and for good reason—Miami-Dade County is (self-evidently) "at home" in the Southern District of Florida, and neither Hilton nor Wellpath is incorporated in the District of Columbia or has their principal place of business here. *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 173 (D.D.C. 2016) ( "[T]he Court may look beyond the allegations of the complaint . . . to satisfy itself that it has [personal] jurisdiction.").

As for specific jurisdiction, the amended complaint makes clear that, to the extent these Defendants have engaged in any conduct in the District of Columbia, those activities "lack[] any connection to the plaintiff['s] claims," *Ford Motor Co.*, 141 S.Ct. at 1031. The amended complaint locates each of the acts relevant to these Defendants in Florida, including Dimitri Patterson's arrest at the Waldorf Astoria (a Hilton subsidiary) in Orlando, Florida, Dkt. 3 at 3–5 (Am. Compl. ¶¶ 16–28); the alleged "release[] [of] private . . . information" by the Waldorf Astoria in Orlando, Florida, *id.* at 6 (Am. Compl. ¶ 30); Dimitri Patterson's incarceration in Orange County, Florida, *id.* at 7, 10 (Am. Compl. ¶¶ 37, 41–42, 58); and Dimitri Patterson's time at a psychiatric treatment facility in Florida City, Florida, *id.* at 11–14 (Am. Compl. ¶¶ 67–84).

Indeed, aside from Plaintiff's allegation that the Clerk of the Supreme Court declined to docket several habeas petitions on behalf of her son, *id.* at 15 (Am. Compl. ¶¶ 85–91), Plaintiff makes no allegation that *any* event relevant to this case took place in or affected anyone in the District of Columbia.

Plaintiff's responds by pointing to 28 U.S.C. § 1343, which, she claims, provides this Court with "personal jurisdiction to hear civil rights matters." Dkt. 14 at 1–3; *see also* Dkt. 28 at 4–6; Dkt. 34 at 4–6. But that statute speaks to subject-matter jurisdiction, rather than personal jurisdiction, and Plaintiff fails to address Defendants' arguments that the conduct alleged in the complaint took place (almost entirely) in Florida. Without the necessary connection to the District of Columbia, the Court may not assert personal jurisdiction over any Defendant, with the possible exception of the Clerk of the Supreme Court.

The Court will, accordingly, grant the motions to dismiss for lack of personal jurisdiction filed by Miami-Dade County, Dkt. 10; Hilton, Dkt. 20; and Wellpath, Dkt. 31.[2]

The Court must also deny the motions for entry of default against Wellpath, Dkt. 23; and Hilton, Dkt. 27, given the lack of personal jurisdiction over those Defendants. No default has been entered against either Defendant, both of which have now responded to Plaintiff's complaint. *See* Dkt. 20; Dkt. 31. And this Court may not enter a default judgment without "satisfy[ing] itself" that it has personal jurisdiction. *Barry v. Islamic Republic of Iran*, 410 F. Supp. 3d 161, 171 (D.C. Cir. 2019) (quotation marks omitted). Because, as just discussed, this Court lacks personal jurisdiction over both Hilton and Wellpath, Plaintiff is not entitled to a default judgment against either Defendant.

---

[2] Miami-Dade County also moves to quash service, on the ground that Patterson fabricated the proof of service she submitted to this Court. *See* Dkt. 10-1 at 8–11. Because this Court is dismissing the County for lack of personal jurisdiction, the Court need not address that claim.

4

The same goes for Plaintiff's motion for entry of default against Orange County, Dkt. 13, even though Orange County has yet to respond to Plaintiff's complaint. *See Barry v*, 410 F. Supp. 3d at 171. As with Wellpath and Hilton, each of the allegations relevant to Orange County took place in Florida, rather than the District of Columbia. *See* Dkt. 3 at 6 (Am. Compl. ¶ 31) (describing the arrest of Dimitri Patterson by Orange County police in Orlando, Florida); *id.* at 7 (Am. Compl. ¶ 37) (describing Dimitri's detention at the Orange County jail); *id.* at 9–10 (Am. Compl. ¶¶ 47–57) (describing another arrest and detention by Orange County police, also in Florida). Because Orange County has yet to respond to Plaintiff's complaint or raise the issue of personal jurisdiction, however, the Court cannot dismiss the complaint against Orange County *sua sponte*. *See Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1105 (D.C. Cir. 1988).[3]

## II.

The Clerk of the Supreme Court moves to dismiss on multiple grounds, *see* Dkt. 40 at 13–24, only two of which need occupy the Court here. Plaintiff seeks both injunctive relief and an award of money damages against the Clerk. Dkt. 3 at 30–37 (Am. Compl. ¶¶ 232–91). The Court lacks authority to issue either form of relief.

As for Plaintiff's request for injunctive relief against the Clerk, "neither a district court nor a circuit court of appeals has jurisdiction to interfere with" the Supreme Court's "supervisory

---

[3] Some Defendants also challenge this Court's subject matter jurisdiction based on Plaintiff's standing (or lack thereof) because the complaint alleges, in large part, injuries to her son Dimitri, rather than to her. *See, e.g.*, Dkt. 20-1 at 7–9; Dkt. 31-1 at 6–8. And this Court expressed similar concerns when denying Plaintiff's motion for a temporary restraining order or a preliminary injunction. Dkt. 7 at 2 (noting that it was "far from clear that Plaintiff ha[d] Article III standing to raise claims related to her thirty-seven-year-old son's allegedly unlawful detention at the South Florida Treatment & Evaluation Center"). Because the Court has dismissed the complaint as against those Defendants for lack of personal jurisdiction, however, the Court need not address standing here. Although "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

authority" over the Clerk.  *In re Marin*, 956 F.2d 339, 340 (D.C. Cir. 1992) (per curiam); *see also Panko v. Rodak*, 606 F.2d 168, 171 n.6 (7th Cir. 1979) ("[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take an action.").  This principle plainly bars injunctive relief against the Clerk of the Supreme Court.  *See Gillenwater v. Harris*, No. 16-cv-495, 2016 WL 8285811, at *2 (D.D.C. Apr. 12, 2016).

      Although the Clerk offers no authority for this proposition, there is reason to believe that the same principle precludes the Court from issuing money damages based on the facts alleged here.  *See, e.g.*, *Miller v. Harris*, No. 14-cv-1330, 2014 WL 3883280, at *1 (D.D.C. Aug. 5, 2014), *aff'd*, 599 F. App'x. 1 (D.C. Cir. 2015) (dismissing for lack of subject-matter jurisdiction plaintiff's money damages claims against the Clerk of the Supreme Court for failure to docket plaintiff's habeas petitions).  The purpose of this jurisdictional bar, after all, is to prevent lower courts from "interfer[ing]" with the Supreme Court's exclusive "supervisory authority" over the Clerk, *In re Marin*, 956 F.2d at 340, and Plaintiff's claims against the Clerk all relate to conduct that falls squarely within his function as an officer of the Supreme Court, including "mail[ing] out a purported Order purporting to deny [a] Petition" for habeas filed by Dmitri, Dkt. 3 at 15 (Am. Compl. ¶ 88), and "refus[ing] to file and Docket the Petition," *id.* (Am. Compl. ¶ 91).  Because "'[i]t is the right and duty of the Supreme Court to correct the irregularities of its officer and compel him to perform his duty,'" this Court lacks jurisdiction to intrude on that "supervisory authority . . . by mandamus *or otherwise*."  *In re Marin*, 956 at 340 (alterations omitted) (emphasis added) (quoting *Griffin v. Thompson*, 43 U.S. (2 How.) 244, 257 (1844)).

      But even if the Court had jurisdiction to hear Plaintiff's damages claims, the doctrine of judicial immunity confers absolute immunity on judicial officers against such claims and "extends to court clerks who perform tasks that are an integral part of the judicial process."

*Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (quotation marks omitted); *see also Sindram v. Suda*, 986 F.2d 1459, 1460–61 (D.C. Cir. 1993) (per curiam).  A plaintiff cannot assert a claim against a clerk without identifying an act "taken by the clerk[] outside of the performance of tasks within the judicial process."  *Sibley*, 786 F. Supp. 2d at 344.  Tasks that clearly fall within the ambit of the judicial process include the "receipt and processing" of filings.  *Id.*  Because these are exactly the kinds of tasks on which Plaintiff predicates her damages claims against the Clerk, judicial immunity bars recovery here.

The Court will, accordingly, grant the Clerk's motion to dismiss, Dkt. 40.  Because the Clerk timely responded to Plaintiff's complaint, and, because, in any event, Plaintiff's claims against the Clerk are insubstantial, the Court will also deny Plaintiff's motion for a default judgment against the Clerk, Dkt. 36.

### III.

The only remaining issue is Miami-Dade County's request for sanctions against Plaintiff.  *See* Dkt. 10-1 at 10–11.  According to Miami-Dade County, "Plaintiff never served the County," and her representations to the contrary to this Court amount to an "attempt to defraud the Court." *Id.* at 10.  Miami-Dade County asks that the Court "use its inherent power to sanction Plaintiff for her fraud upon the Court and [to] award the County its attorneys' fees incurred in having to respond to the Amended Complaint."  *Id.* at 11.

The inherent power to sanction exists to "protect [courts'] institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."  *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015).  To award

7

attorneys' fees pursuant to that authority, the Court must find bad faith by clear and convincing evidence. *Klayman v. Jud. Watch, Inc.*, 314 F. Supp. 3d 308, 312 (D.D.C. 2018).

Although the Court is troubled by Miami-Dade County's evidence, the Court cannot find bad faith under that demanding standard, at least on the present record. According to Plaintiff's proof of service, a process server served Miami-Dade County on June 18, 2021. Dkt. 8 at 2. That proof of service names the Mayor herself, Daniella Cava, as the individual upon whom service was effected. *Id.* Miami-Dade County responds that the Mayor does not generally accept service and that summonses delivered to the Mayor's office are instead logged by a receptionist. Dkt. 10-1 at 9–10 & 9 n.5. Because the reception desk log for June 18, 2021, shows no summons from Plaintiff on that date, *see* Dkt. 10-2 at 2 (Estrada Decl. ¶¶ 3–6); Dkt. 10-3 (reception desk logbook), Miami-Dade County argues that Plaintiff has "misrepresent[ed] service on the County, presumably in the hopes of obtaining a default against [an] unwitting party." Dkt. 10-1 at 10. Miami-Dade County further notes that the proof of service identifies the process server as "Brian D. Patterson," Dkt. 8 at 2, whom it has "strong reason to believe . . . is related to the Plaintiff, Brenda Patterson," Dkt. 10-1 at 9 n.4. In response, Plaintiff maintains that the summons and complaint were "delivered to Mayor Daniella Cava . . . by a person over the age of 18" on June 18, 2021. Dkt. 14 at 3.

This evidence casts at least some doubt as to the validity of Plaintiff's proof of service. Dkt. 8. The Court has reason to be skeptical, for example, that the Plaintiff's process server personally served the Mayor, as Plaintiff maintains, *see* Dkt. 8 at 2; Dkt. 14 at 3, particularly given the evidence from Miami-Dade County regarding its system for receiving and logging summonses, *see* Dkt. 10-2 at 2 (Estrada Decl. ¶¶ 3–6). Service by a potential relative, Dkt. 10-1

at 9 n.4, arguably heightens this skepticism, although Rule 4 requires only that the service processer "is at least 18 years old and not a party" to the action, Fed. R. Civ. P. 4(c)(2).

What is lacking, however, is evidence that Plaintiff knew that service was not effected on Miami-Dade County but nevertheless represented to the Court that the County had been served. In *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 67 (D.D.C. 2007), for example, plaintiffs' counsel attempted service on an agency but received a letter in return indicating that the agency was not authorized to accept service for the defendant. Even though plaintiff's counsel was therefore "clearly on notice that [the defendant] had not been served with process," counsel nevertheless filed a proof of service indicating that the defendant had been personally served. *Id.* at 83. The Court concluded that counsel had "altogether failed to investigate the failure of service or to attempt to validly re-serve" the defendant, and instead "knowingly filed a false" proof of service. *Id.* at 84. These findings, combined with counsel's violation of Rule 11's requirement that an attorney certify all factual contentions within a filing, meant that sanctions were warranted. *Id.* Here, in contrast, the Court lacks clear and convincing evidence that Plaintiff knew that Miami-Dade County had not been served. The Court cannot, as a result, conclude that Plaintiff knowingly misrepresented service on Miami-Dade County, and so the Court will deny the County's request for sanctions.

But because this evidentiary gap may conceivably be remedied, the Court will deny the County's motion without prejudice. Should the County wish to buttress its claim of fraud, the County remains free to do so and to renew its motion based on any pertinent evidence it discovers. Regardless of how the County proceeds, Plaintiff is cautioned that her conduct in this case is concerning. As noted above, the Court is aware of two similar cases that have already been dismissed by other federal district courts, and one Defendant maintains that Plaintiff's

9

son—the subject of most of the harms described in the complaint—"has filed over 40 cases in at least five federal jurisdiction[s] against a variety of parties." Dkt. 31-1 at 1 n.1. Plaintiff is reminded that, even though she is proceeding *pro se*, she is subject to Rule 11's requirement that she certify that any factual contentions contained within her filings "have evidentiary support," Fed. R. Civ. P. 11(b)(3), and that failure to comply with this obligation may subject her to sanctions.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the motions to dismiss filed by Miami-Dade County, Dkt. 10; Hilton, Dkt. 20; Wellpath, Dkt. 31; and the Clerk, Dkt. 40, are **GRANTED**. It is further **ORDERED** that Plaintiff's motions for entry of default against Orange County, Dkt. 13; Wellpath, Dkt. 23; and Hilton, Dkt. 27; along with Plaintiff's motion for default judgment against the Clerk, Dkt. 36, are **DENIED**; and that Miami-Dade County's motion for sanctions, Dkt. 10, is **DENIED** without prejudice.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge